IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SAMUEL ASMEROM,

        Plaintiff,

v.                                                  No. 1:23-cv-00923-MV-JMR

ARIOSO LIMITED PARTNERSHIP,
d/b/a ARIOSO APARTMENTS,
I.Q. DATA INTERNATIONAL, INC.,
PACIFICAP MANAGEMENT, INC.,
PACIFICAP HOLDINGS XXVI LLC, and
PAC 7303 MONTGOMERY, LP
        Defendants.

## FIRST AMENDED COMPLAINT FOR DAMAGES

1. In 2019, Plaintiff Samuel Asmerom leased an apartment from Defendant Arioso Apartments.

2. The apartment was in poor condition, including mold, cockroaches, and leaks. Mr. Asmerom repeatedly requested repairs and Arioso refused.

3. In 2020, Arioso brought an eviction action against Mr. Asmerom.

4. Mr. Asmerom hired an attorney, disputed the claims, and asserted counterclaims. During the pendency of the case, he moved out.

5. The parties reached a settlement in which Arioso agreed to drop its claims and pay Mr. Asmerom $3,763.33.

6. Arioso also agreed to not to provide a negative reference if contacted by a landlord to which Mr. Asmerom had applied, and not to report derogatory information to Mr. Asmerom's credit.

7. Arioso paid the settlement funds and the case was dismissed with prejudice.

8. Ignoring its agreement, Arioso immediately hired Defendant I.Q. Data to collect the same debt from Mr. Asmerom.

9. I.Q. Data placed false and derogatory information on Mr. Asmerom's credit reports, preventing him from finding housing.

10. Mr. Asmerom brings claims against Defendants for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the New Mexico Unfair Practices Act ("UPA"), NMSA § 57-12-1 *et seq.*, and for tortious breach of contract, tortious debt collection, and defamation.

**Parties**

11. Plaintiff Samuel Asmerom is a natural person residing in Albuquerque, New Mexico.

12. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

13. Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3).

14. Defendant Arioso Limited Partnership d/b/a Arioso Apartments ("Arioso") is a New Mexico limited partnership that owns and operates apartment buildings in Albuquerque.

15. Defendant PacifiCap Holdings XXVI LLC ("PacifiCap") is a foreign limited liability company that owns and operates apartment buildings in Albuquerque. It is the general partner of Arioso.

16. Defendant PacifiCap Management Inc. ("PMI") is a property management company that managed the lease agreement between Mr. Asmerom and Defendant Arioso and managed Arioso's debts and debt collection activity on behalf of Arioso. It is a foreign corporation based in Portland, Oregon.

17. Upon information and belief, at all times material to this case, Arioso, PacifiCap and PMI operated a joint venture or enterprise whose activities involved leasing the apartment to

       Mr. Asmerom, and engaging in debt collection conduct against Mr. Asmerom, and including, without limitation:

       a.    They shared a community of interest with the object or purpose of leasing and managing apartments through Arioso;

       b.    They shared control over common business activities;

       c.    The shared management and employees; and

       d.    They shared profits and losses.

18. Defendant PAC 7303 is a foreign partnership that owns and operates apartments buildings in Albuquerque. Upon information and belief, it purchased the apartment building from Arioso and PacifiCap and assumed the accounts and the liabilities.

19. Defendant I.Q. Data International, Inc. ("I.Q. Data"), is a foreign corporation that collects debts on behalf of Arioso and others.

20. I.Q. Data is a "debt collector," as defined by 15 U.S.C. § 1692a(6), because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

21. I.Q. Data is a "furnisher of information" as defined by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b). I.Q. Data regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies about its consumer transactions.

22. The conduct set forth in this Complaint occurred in the regular course of Defendants' trade or commerce.

23. Defendants are jointly and severally liable for one another's misconduct.

## Facts

24. In 2019, Mr. Asmerom entered into a lease agreement with Arioso and PacifiCap (hereinafter "Arioso").

25. The apartment was infested cockroaches and was subject to flooding and mold.

26. Mr. Asmerom complained to Arioso repeatedly, but the management failed to assist him.

27. On April 15, 2020, Arioso filed the eviction lawsuit *Arioso Apartments v. Samuel Asmerom*, No. T-4-CV-2020-005647 (Albuquerque Metropolitan Court) ("Lawsuit").

28. Mr. Asmerom hired an attorney and counterclaimed.

29. In late April, during the pendency of the Lawsuit, Mr. Asmerom moved out of the apartment.

30. The parties settled the Lawsuit ("Settlement Agreement").

31. In the Settlement Agreement, Arioso agreed to drop its claims against Mr. Asmerom.

32. Arioso also agreed to pay $3,763.33 as part of the Settlement Agreement.

33. The Settlement Agreement provided that "Arioso will provide a neutral review/recommendation, relating to future rental background inquiries related to Asmerom."

34. The Settlement Agreement also stated that "Arioso or, its designee, to the extent they have previously notified any third-party of negative reporting, related to Asmerom rental, or, credit worthiness, will remove such reference."

35. Arioso paid the $3,763.33.

36. On August 3, 2020, the Lawsuit was terminated with a Stipulated Order to Dismiss with Prejudice, agreed upon by Arioso and Mr. Asmerom.

37. At most four months later, PMI, hired I.Q. Data to collect an Arioso debt from Mr. Asmerom. PMI and IQ Data have a collections services agreement.

38. PMI stated to I.Q. Data that Mr. Asmerom continued to owe Arioso money.

39. The statement was false; Mr. Asmerom owed nothing. The alleged debt had been extinguished.

40. PMI and Arioso knew the information was false.

41. The statement was defamatory, damaging to Mr. Asmerom's reputation. I.Q. Data, and eventually the credit reporting agencies, understood the statement to be defamatory.

42. PMI and Arioso knew that I.Q. Data would harass Mr. Asmerom and report derogatory information to credit reporting agencies.

43. I.Q. Data acted as Arioso and PMI's agent with respect to all credit reporting, and all collection activities generally, concerning Plaintiff.

44. I.Q. Data reported the false debt to credit reporting agencies Equifax, Experian, and Trans Union, harming Plaintiff's credit reputation.

45. In late 2020 or early 2021, the apartment building and its accounts, including Mr. Asmerom's account, were sold to Defendant PAC 7303.

46. PAC 7303 continued to falsely state to IQ Data that Mr. Asmerom owed Arioso money.

47. If PAC 7303 is not liable for its own misconduct in continuing to collect this debt, it is liable pursuant to one or more exceptions to the general rule regarding successor liability. *See Garcia v. Coe Mfg. Co.*, 1997-NMSC-013, 123 N.M. 34, 933 P.2d 243 (The general rule in New Mexico is that a successor corporation that purchases the assets of another corporation is, with four exceptions, not responsible for its predecessor's debts and liabilities. The four traditional exceptions to application of the rule precluding liability are:

(1) where there is an agreement to assume those obligations; (2) where the transfer results in a consolidation or merger; (3) where there is a continuation of the transferor corporation; or (4) where the transfer is for the purpose of fraudulently avoiding liability).

48. Mr. Asmerom disputed I.Q. Data's credit reporting online, explaining that Arioso had agreed to delete the account, and that the account was subject to litigation.

49. I.Q. Data received copies of the disputes.

50. I.Q. Data willfully failed to conduct a reasonable reinvestigation, as required by the FCRA, 15 U.S.C. § 1681i(a) and 1681s-2(b).

51. In the alternative, I.Q. Data negligently failed to conduct a reasonable reinvestigation, as required by the FCRA, 15 U.S.C. § 1681i(a) and 1681s-2(b).

52. I.Q. Data verified as accurate that Plaintiff owed the alleged debt, which was a willful, and malicious misrepresentation.

53. I.Q. Data continued to make derogatory reports, and the credit reporting agencies continued to include this false information in Mr. Asmerom's consumer reports.

54. The false information lowered Mr. Asmerom's credit scores.

55. Upon information and belief, the false information was published by Equifax, Experian and Trans Union to third parties.

56. It was only when Mr. Asmerom hired another attorney to assist with credit dispute letters that I.Q. Data finally removed the negative reports from his credit.

57. Mr. Asmerom has no reason to believe that Arioso and PMI will stop pursuing him.

58. Mr. Asmerom faces irreparable injury should Arioso and PMI continue pursuing him for the debt, harassing him, threatening his finances, and harming his credit.

59. This injury includes the potential denial of credit, housing, and employment opportunities.

60. Mr. Asmerom were damaged by Defendants' misconduct.

61. Mr. Asmerom was not able to find housing, despite applying for multiple apartments, because Defendants continued to report him delinquent.

62. As a result of the false information on his credit report, Mr. Asmerom's credit reputation was injured.

63. Mr. Asmerom also lost time and incurred various out of pocket expenses.

64. Defendants' conduct caused aggravation, frustration, humiliation, and other emotional distress to Mr. Asmerom.

65. Defendants' conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith.

66. Upon information and belief, Defendants' actions are part of a pattern of similar misconduct, justifying an award of punitive damages.

### First Claim for Relief: Violations of the FCRA by I.Q. Data, PMI, PacifCap and Arioso

67. I.Q. Data failed to review and consider all relevant information submitted by Plaintiff.

68. I.Q. Data failed to conduct a genuine and reasonable reinvestigation in response to Plaintiff's disputes.

69. I.Q. Data failed to report to the credit reporting agencies that the information it reported about the account is inaccurate.

70. I.Q. Data persisted in reporting information that it knew or should have known to be inaccurate and damaging.

71. I.Q. Data's actions are willful or, in the alternative, negligent, violations of the FCRA, including 15 U.S.C. § 1681s-2(b).

72. I.Q. Data acted as PMI, PacifiCap and Arioso's agent in the foregoing conduct.

73. Plaintiff is entitled to actual damages, statutory damages and punitive damages, costs

and reasonable attorney fees.

### Second Claim for Relief: Violations of the Unfair Practices Act by Arioso, PacifiCap, PMI and I.Q. Data

74. The foregoing transaction occurred in the regular course of Defendants' trade or commerce, and their actions are subject to the New Mexico Unfair Practices Act ("UPA").

75. The foregoing actions of Defendants constitute unfair or deceptive trade practices, within the meaning of the UPA, NMSA §57-12-2.

76. Defendants willfully engaged in these unlawful trade practices.

77. As a result of Defendants' violations of the UPA, Plaintiff is entitled to recover actual or statutory damages, trebled, plus costs and reasonable attorney's fees.

78. Plaintiff is also entitled to an injunction barring Defendants' from continuing to collect on the alleged debt, including making derogatory reports to their credit, and barring Defendants from engaging in further unlawful debt collection activities.

### Third Claim for Relief: Tortious Breach of Contract by Arioso and PacifiCap

79. Arioso's actions constitute a breach of its contract with Plaintiff.

80. Arioso's breach was willful and constituted a breach of the covenant of good faith and fair dealing. PacifiCap is liable for Arioso's breach as it is Arioso's general partner.

81. Plaintiff is entitled to actual damages and punitive damages.

### Fourth Claim for Relief: Tortious Debt Collection by Arioso, PacifiCap, PMI and I.Q. Data

82. PacifiCap, Arioso and I.Q. Data's actions constitute unreasonable and tortious debt collection practices in violation of the doctrine enunciated by the New Mexico Supreme Court in *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970).

83. Plaintiff is entitled to recover actual damages and punitive damages.

## Fifth Claim for Relief: Violation of the Fair Debt Collection Practices Act by I.Q. Data

84. The foregoing actions of Defendant I.Q. Data violated the FDCPA, including 15 U.S.C. §§ 1692d, 1692e, and 1692f.

85. Plaintiff is entitled to recover damages, costs and reasonable attorney fees.  15 U.S.C. § 1692k.

## Sixth Claim for Relief: Defamation by Arioso, PacifiCap and PMI

86. Arioso, PacifiCap and PMI published false information about Plaintiff; specifically, Arioso and PacifiCap informed I.Q. Data that Plaintiff owed a debt he did not owe.

87. Arioso PacifiCap, and PMI knew the communication was false or negligently failed to recognize that it was false.

88. Arioso, PacifiCap and PMI's communication caused actual injury to Plaintiff's reputations.

WHEREFORE, Plaintiff prays that this Court:

A.   Award actual, statutory, and punitive damages as set forth herein;

B.   Provide injunctive relief as set forth herein;

C.   Order declaratory relief that Plaintiff owes nothing to Arioso or its collection agencies;

D.   Award costs and attorney's fees; and

E.   Award such other relief as this Court deems just.

Respectfully submitted,

FEFERMAN, WARREN & MATTISON

*/s/ Cassie M. Fleming*
Cassie M. Fleming
Attorneys for Plaintiff
300 Central Avenue S.W., Suite 2000 West
Albuquerque, N.M. 87102
(505) 243-7773
(505) 243-6663 fax

cfleming@nmconsumerwarriors.com